United States Bankruptcy Court
District of South Dakota

Charles L. Nail, Jr.
Bankruptcy Judge



Federal Building and United States Post Office                    Telephone: (605) 945-4490
225 South Pierre Street, Room 211                                       Fax: (605) 945-4491
Pierre, South Dakota 57501-2463

October 17, 2008

Karen Paige Hunt, Esq.
Attorney for Plaintiff
135 East Colorado Boulevard
Spearfish, South Dakota  57783

John H. Mairose, Esq.
Attorney for Debtors-Defendants
2640 Jackson Boulevard, Suite 3
Rapid City, South Dakota  57702

       Subject:    ***Pioneer Bank & Trust, Special Administrator v. Gerald Wayne Cameron and Rena Eva Dorcas Cameron (In re Cameron)***, Adv. No. 08-5007; Chapter 7; Bankr. No. 08-50005

Dear Counsel:

       The matters before the Court are Plaintiff's Motion for Summary Judgment and Debtors-Defendants' Cross Motion for Summary Judgment.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This letter decision and accompanying order shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052.  As set forth below, Plaintiff's motion will be granted, and Debtors-Defendants' motion will be denied.

       **Summary of material facts.**  On July 11, 2002, Eleanor Youman Sigloh ("Sigloh") executed a power of attorney that empowered her niece Dorcas Cameron, aka Rena Eva Dorcas Cameron ("Dorcas Cameron"), and Dorcas Cameron's husband Jerry Cameron, aka Gerald Cameron, to "manage and conduct all [Sigloh's] estate and all [Sigloh's] affairs exercising all authority [Sigloh] would have if acting personally."  The power of attorney stated it was not "exercisable by [the Camerons] in favor of [the Camerons] or [their] estate, or the creditors of [their] estate."  It also prohibited the sale or other transfer of Sigloh's real estate.

       On April 10, 2003, Sigloh executed another power of attorney.  This power of attorney allowed Dorcas Cameron to close a sale of Sigloh's real property on May 1, 2003.  By this time, Sigloh's health and cognitive skills had declined substantially, and her physicians believed she would have been unable to make significant financial and property decisions for herself.  Sigloh passed away on February 15, 2004.

       By order entered November 1, 2005, a state court appointed Thomas E. Carr ("Carr") a Special Administrator for Sigloh's probate estate and directed him to investigate possible financial wrongdoing by persons associated with Sigloh or her estate.  Following his investigation, Carr concluded, *inter alia*, that between

*In re Cameron*
October 17, 2008
Page 2

December 2002 and May 1, 2003, Dorcas Cameron had made gifts totaling in excess of $325,000.00 to herself from Sigloh's assets and had thereby substantially depleted Sigloh's assets. Carr further concluded this self-dealing substantially altered the intended result of Sigloh's will, which would have left Dorcas Cameron only approximately 5% of her assets rather than the 60% she appropriated for herself using the powers of attorney.

Based on Carr's June 5, 2006 report, the state court entered an order on October 11, 2006, authorizing Carr to initiate legal proceedings in connection with Dorcas Cameron's inappropriate transfers of Sigloh's assets. On November 13, 2006, Carr brought suit in state court against Dorcas Cameron, Gerald Cameron, and three others. In his complaint, Carr alleged, *inter alia*, breach of fiduciary duty and fraud by the Camerons in their dealings with Sigloh's assets while they served as her attorneys in fact.

Carr, who was an officer of Plaintiff Pioneer Bank & Trust ("the Bank"), died in January 2007. The Bank was appointed the Special Administrator in his stead and eventually substituted as the plaintiff in the state court action.

On April 25, 2007, summary judgment was entered against Dorcas Cameron for $454,626.08. The Court concluded "as a matter of law . . . Dorcas Cameron breached the fiduciary duty she owed to [Sigloh] and committed fraud by engaging in self-dealing between December 2002 and May 2003[.]" No appeal was taken.

On August 16, 2007, summary judgment was entered against Gerald Cameron for $451,267.53, jointly and severally with Dorcas Cameron. The Court concluded "as a matter of law . . . Gerald Cameron breached the fiduciary duty he owed to [Sigloh] and committed fraud by engaging in self-dealing between December 2002 and May 2003[.]" No appeal was taken.

The Bank made a small recovery on the judgments. As of January 2, 2008, the Bank was still owed $438,856.85 plus applicable post-judgment interest.

Gerald Cameron and Dorcas Cameron filed a joint petition for relief under chapter 7 of the bankruptcy code on January 10, 2008. The Bank timely commenced this adversary proceeding seeking a determination that its claims against the Camerons were nondischargeable under 11 U.S.C. § 523(a)(4).

The Bank moved for summary judgment. The Camerons resisted and filed a cross-motion for summary judgment. They conceded there were no material facts in dispute. The legal issue raised by the Camerons was whether under federal law the subject powers of attorney created a fiduciary relationship between the Camerons and Sigloh. They argued they did not because no express trust was created by the powers of attorney.

**Law.** Summary judgment is appropriate when "there is no genuine issue [of] material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c). An issue of material fact is *genuine* if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (quotes therein). A genuine issue of fact is *material* if it might affect the

*In re Cameron*
October 17, 2008
Page 3

outcome of the case. *Id.* (quotes therein).

The matter must be viewed in the light most favorable to the party opposing the motion. *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997); *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th Cir. 1992) (quoting therein *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587-88 (1986), and citations therein). Where motive and intent are at issue, disposition of the matter by summary judgment may be more difficult. *Cf. Amerinet*, 972 F.2d at 1490.

The movant meets his burden if he shows the record does not contain a genuine issue of material fact and he points out the part of the record that bears out his assertion. *Handeen v. LeMaire*, 112 F.3d 1339, 1346 (8th Cir. 1997)(quoting therein *City of Mt. Pleasant, Iowa v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir. 1988)). No defense to an insufficient showing is required. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) (citation therein); *Handeen*, 112 F.3d at 1346.

If the movant meets his burden, however, the non movant, to defeat the motion, "must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (quoting *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995)). The non movant must do more than show there is some metaphysical doubt; he must show he will be able to put on admissible evidence at trial proving his allegations. *Bell*, 106 F.3d at 263 (citing *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 737 (8th Cir. 1995)).

To prevail on a nondischargeability complaint, the creditor must establish by a preponderance of the evidence all the elements required. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991); *Jafarpour v. Shahrokhi (In re Shahrokhi)*, 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001). The exceptions to discharge are construed narrowly in order to effect the fresh start policy of the Bankruptcy Code. *Owens v. Miller (In re Miller)*, 276 F.3d 424, 429 (8th Cir. 2002).

Two elements must be established under § 523(a)(4) to prove a debt is nondischargeable because it arose from the fraud or defalcation of a fiduciary: (1) a fiduciary relationship existed between the creditor and the debtor; and (2) the debtor committed fraud or defalcation while acting in that fiduciary capacity. *Shahrokhi*, 266 B.R. at 707; *E.W. Wylie Corp. v. Montgomery (In re Montgomery)*, 236 B.R. 914, 922 (Bankr. D.N.D. 1999). The only element of § 523(a)(4) at issue in this adversary proceeding is whether the Camerons were Sigloh's fiduciaries pursuant to the powers of attorney.

Whether a party is a fiduciary under § 523(a)(4) is a question of federal law. *Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir. 1997). The fiduciary capacity necessary for a debt to be declared nondischargeable under 11 U.S.C. § 523(a)(4) must arise from an express trust, not

a constructive trust[1]. *Barclays American/Business Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 878-79 (8th Cir. 1985). Generally, for an express trust to exist, the agreement between the parties must include an explicit declaration of a trust, identify a trust *res*, and set forth the terms of a trust relationship; a mere contractual relationship is insufficient. *Werner v. Hofmann (In re Hofmann)*, 144 B.R. 459, 463-64 (Bankr. D.N.D. 1992), *aff'd*, 5 F.3d 1170 (8th Cir. 1993). The fiduciary relationship to which § 523(a)(4) applies does not encompass trusts imposed on transactions by operation of law or as a matter of equity. *ITT Life Insurance Co. v. Haakenson (In re Haakenson)*, 159 B.R. 875, 887 (Bankr. D.N.D. 1993). A fiduciary under § 523(a)(4) is more narrowly defined than it is under the common law. *Montgomery*, 236 B.R. at 922. Accordingly, a broad, general definition of a fiduciary relationship as one arising from confidence, trust, and good faith is not applicable under § 523(a)(4). *Shahrokhi*, 266 B.R. at 707 (quoting therein *Mills v. Gergely (In re Gergely)*, 110 F.3d 1448, 1450 (9th Cir. 1997)).

**Discussion.** In this Circuit, the Court must "look specifically at the property that is alleged to have been defalcated to determine whether [the defendant] was legally obligated to hold that specific property for the benefit of [another.]" *Hunter v. Philpott*, 373 F.3d. 873, 875 (8th Cir. 2004). The Court must also "look to the substance of the transaction in deciding whether a person is a fiduciary or whether the relationship is more contractual than fiduciary." *Id*. at 876 (cites therein). In light of both the property at issue – all of Sigloh's estate – and the substance of the transaction – managing those assets for Sigloh's benefit, not theirs – it is evident the Camerons served as Sigloh's fiduciary as a matter of federal law pursuant to § 523(a)(4).

Foremost, the Camerons were not merely Sigloh's agents.

> As a rule, the general fiduciary duty created by a power of attorney gives rise to an agency relationship, but does not give rise to the fiduciary capacity required by section 523(a)(4). [*Bast v. Johnson (In re Johnson)*, 174 B.R. 537, 541 (Bankr. W.D. Mo. 1994)]. However, if a debtor has a sufficiently elevated level of fiduciary duty, section 523(a)(4) may apply to an agency relationship. *See id.*

*Homes v. Hrabik (In re Hrabik)*, 330 B.R. 765, 773 (Bankr. D.N.D. 2005). Here, as in *Hrabik*, both powers of attorney were to be exercised strictly for Sigloh's benefit, and the first power of attorney emphasized it was not to be exercised for the Camerons' benefit. Both powers of attorney delineated what property was governed by that particular power, and the first specifically excluded the power to convey any real estate. Thus, the *res* of each trust was clearly identified. *Cundy v. Woods (In re Woods)*, 284 B.R. 282, 289 (D. Colo. 2001) (cites therein). Because of Sigloh's age and health when both powers of attorney were created, and because the first was designed to continue even in the event Sigloh's health and abilities continued to decline, there was no expectation or understanding Sigloh would monitor the

---

[1] A constructive trust is one that arises out of the wrongdoing itself. See *Werner v. Hofmann (In re Hofmann)*, 144 B.R. 459, 463 (Bankr. N.D. 1992), *aff'd*, 5 F.3d 1170 (8th Cir. 1993).

*In re Cameron*
October 17, 2008
Page 5

Camerons' actions. *Johnson*, 174 B.R. at 541-42 (Bankr. W.D. Mo. 1994), and *Rech v. Burgess (In re Burgess)*, 106 B.R. 612, 619-21 (Bankr. D. Neb. 1989). Further, the trust did not arise from a contract. *See, e.g., BPS Guard Services Inc. v. Myrick (In re Myrick)*, 172 B.R. 633, 635-37 (Bankr. D. Neb. 1994) (only an employee-employer relationship existed, not a fiduciary one). Finally, the Camerons' fiduciary status did not arise from a constructive trust imposed as a matter of law based on their wrongdoing after the powers of attorney were signed. The fiduciary relationship arose from the powers of attorney themselves.

Other courts in other circuits are in accord. *See, e.g., LSP Investment Partnership v. Bennett (In re Bennett),* 989 F.2d 779 (5th Cir. 1993); *Pool v. Johnson*, 2002 WL 598447, slip op. (N.D. Tex. April 15, 2002); *In re Mones*, 169 B.R. 246 (Bankr. D.D.C. 1994); *Ostrum v. Porter (In re Porter)*, 2008 WL 114914 (Bankr. N.D. W. Va. Jan. 10, 2008); *Nelson v. Ishmael (In re Ishmael)*, 2008 WL 80040, slip op. (Bankr. E.D. Pa. Jan. 7, 2008). *Compare In re Woods*, 284 B.R. 282 (D. Colo. 2001).

No other legal issues are in dispute. Accordingly, an order will be entered granting Plaintiff's motion for summary judgment, denying Debtors-Defendants' cross-motion for summary judgment, and directing entry of judgment for Plaintiff.

Sincerely,

*/s/ Charles L. Nail, Jr.*

Charles L. Nail, Jr.
Bankruptcy Judge

CLN:sh

cc:   adversary file (docket original; serve parties in interest)

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota